Good afternoon, Illinois Appellate Court First District Court is now in session, the Sixth Division. The Honorable Justice Sharon O. Johnson presiding, case number 22-1264, People v. Carl Mobley. Thank you. Good afternoon. I'd like to first thank you all for your patience. The prior case went a little long and we've also had some technical difficulties this afternoon. So thank you in advance for your patience and understanding. I am Justice Sharon O. Johnson, and I am joined by my colleagues, Justice Sanjay T. Taylor, and Justice Carl A. Walker. Each counsel will be given 20 minutes in which to make their argument with the appellant having the opportunity to reserve time for rebuttal. I'd like to begin with the appellant. Please state your appearance for the record. Tomas Gonzalez on behalf of the appellant, Carl Mobley. Okay. And would you like to reserve any time for rebuttal? I think five minutes probably should be sufficient. Thank you. And counselor for the appellate. Good afternoon, Your Honor. May it please the court, Caitlin Chanew, Assistant State's Attorney on behalf of the people. Okay. Thank you very much. You may begin, Attorney Gonzalez. Thank you. May it please the court, counsel. This court should reverse Carl Mobley's convictions for unlawful possession of a weapon by a felon because under the new test for evaluating gun restrictions under New York State Rifle Association v. Bruin, the unlawful possession of a weapon by a felon statute is unconstitutional as applied to him. Under the two-part Bruin test for evaluating gun laws, Mobley is protected by the text of the Second Amendment and the lifetime disarmament based simply on his status as a convicted felon is not rooted on the nation's history and tradition. I want to talk- Before you go on, Mr. Gonzalez, before you go on, you want to just respond to the state's contention that this was forfeited because it's being raised for the first time on appeal? Yes. First of all, this court, and I would submit that for the same reason that this very argument was rejected at Brooks, it should be rejected here. Mobley concedes, of course, that he didn't raise the issue in the circuit court. However, the record here is sufficiently developed and it contains all the facts necessary for the here, Mobley was solely tried and convicted of his mere possession of a firearm based on a predicate felony, his violation of home monitoring slash escape. That's all there in the record, as is the acceptance by the parties below that, okay, they were pretty much all not violent. No one ever contested whether or not he was violent or not. Even if that weren't relevant, the greater point to the question about forfeiture, it's all here for the same reason it was here in Brooks, for the same reason it was here in the case that the state just cited as additional authority, albeit that case is not published, but it's the same idea. It's just a mere possession plus the predicate felony. We have everything we need here. But now you also, just since you mentioned it, I want to come back to it. You said that he's a non-violent felon and the state mentions in their brief that he has convictions for both robbery and aggravated battery. Actually, yeah, I don't believe that's fully accurate. And I know the parties in the court didn't even rely on it. It was mostly the only thing I was alluded to was the, he did have a number of retail thefts and I believe the aggravated, I think it was aggravated battery and it's the oldest one by far. And it goes back decades. But so just to be clear, so he does have a conviction of aggravated battery, which goes back decades. And you said decades, are you saying two decades, three decades? I, you know what, I don't recall off the top of my head. I want, I'm thinking it's the eighties. But even if you look at his DOC, that would be nearly five decades. Okay. Well, I don't think it's okay. It might be, you know what I have, I do have his IDOC sheet here and that's not on there. Okay. So I guess the best way I can answer that is, okay, well, I guess the PSI lists it. Yes, it did. And what about the conviction for robbery? I think that was also listed in the pre-sentence investigation. Okay. Well, I think the short answer is okay. Even assuming he has those two, at the end of the day, it's pretty much a red herring because really the question is, at the end of the day is whether or not there's a historical tradition of lifetime disarmament based solely on felony status, regardless of the nature of the status, regardless of how many. Okay. So I'll even grant this idea and I'll even concede that, okay, maybe even assuming he does have the robbery conviction, assuming he has aggravated matter, assuming he has whatever convictions, though the parties pretty much focused on the non-violence of the numerous retail thefts. I think he had 12 or something like that. But again, whether it's two or six or 10, the point being at the end of the day is twofold. One is whether or not the conduct of possessing the gun and nothing else is covered by the Second Amendment. And number two, whether or not there's a historical tradition from the relevant founding area period that is even remotely similar to lifetime ban, lifetime disarmament. Unless you have any further questions about the procedural or the forfeiture, that's pretty much my answer as far as, you know, regardless of what the PSI says, his predicate felony is based solely on the escape slash violation of home monitoring. And that's what this record does show. It's the exact same situation that we had in Brooks. So the issue is not forfeited. Substantively, Bruin explained that under the new framework, that reviewing courts have to look to two things. Again, and this is really important because the state kind of meanders in its brief and it kind of muddies it a little bit. And at the end of the day, they conflate the two steps. All right. So what Bruin calls for is a two-step approach. And the first step is whether or not his conduct is covered by the text of the Second Amendment, not whether, and that kind of doesn't entail what he, especially uncharged conduct, whatever it is that he did with a gun or his status as a felon, especially the latter point. But before we get there, doesn't Bruin say that the test applies to law abiding citizens? It doesn't mandate that. And it doesn't even really address that to the extent that it mandates any particular answer as to what it means by that. I submit that the use the phrase law abiding in Bruin and even in Heller and McDonald, those terms were basically descriptors of those particular plaintiffs. It wasn't some kind of mandate that said that the Second Amendment only applies to, first of all, whatever that term means. I mean, the Second Amendment, the text of the Second Amendment, and I want to stay focused on the two steps separately because that's critical here. If we're looking at the text, the text doesn't say anything about whether or not, it doesn't say law abiding. And Bruin and Heller and McDonald never mandated that that should be read into the Second Amendment. But they don't mandate whether, they don't distinguish between violent and nonviolent crimes either. They do not. And Moby still raises it as an as applied challenge. But I don't think it's necessary to go there. I don't really think that resolves the $64,000 question, which again, at the end of the day, is whether or not this lifetime band that's contained in the unlawful possession of a weapon by a felon statute is rooted in history. Because again, for the same reason that Brooks found the state's argument here to be an improper conflating of the two steps, because the state's argument is the same one that this court and Brooks rejected. It's putting the cart before the horse. And it's begging the question. And so the references to law abiding, and yes, I know courts have grappled with this idea, is it dicta, is it not dicta? Okay, well, whatever you want to call it, the bottom line is that wasn't the basis of the holding. And the idea that law abiding, again, whatever that means, even assuming it means that, okay, maybe it means someone with a past record or past conviction. All right, Heller said specifically that the Second Amendment applies to all Americans, to all people, no qualification. And all Bruin did, again, was just reiterate the idea that those particular plaintiffs, and specifically Bruin, because he was just an applicant that was trying to buy a firearm in a May issue state. Okay, he was a law abiding citizen. And that's really the, regardless of whether the court referred to law abiding once or twice or 20 times. You're saying everyone is law abiding. Pardon me? So are you stating that everyone is considered law abiding? For the first step, it's not even really relevant. For the first step, for the text, part of the text. Is that what you're saying? That is, yeah, that's exactly what I'm saying. Okay. Yes. For the text part of the test, we just look to nothing but the Second Amendment, which provides a right of the people, which Bruin says, or Heller said, is all Americans, whether or not they have the right to keep and bear arms. That's it. That's the text. So the relevant conduct here, if you will, is Mobley's mere constructed possession of a firearm in public or self-defense, regardless of anything that preceded it, which the state, of course, didn't charge as it was their choice to do so. The state now in its brief tries to walk away from that choice. And Brooks, again, rejected the state's attempt to do that in that case. Okay. Because they're the ones that control what they want to charge, what they want to prove. So law abiding to your question, Justice Johnson is like, no, it's just whether or not the possession of a gun. And for the same reason that not law abiding, not course of conduct or anything like that. So for the same reasons that Brooks found that possession was covered by the text, that same rationale is spot on. It applies here. I think the bigger issue, of course, I think the thorniest one, and admittedly, the most difficult one to resolve for this court and for all courts is the history and tradition test. Because, I mean, we could read the stacks of cases that keep churning out and they're all over the place. I will acknowledge that most of them have upheld the statute under history and tradition prong of this. As far as I know, Illinois, Brooks and Baker in particular, and I know counsel cited Robinson as additional authority, albeit the latter case is not published. But I think there's a major flaw, major flaw in Baker. And I'll just kind of stick to Baker because I think Brooks kind of just piggybacked off of Baker without really any analysis. So when you look at Baker, Baker basically just resolved the history, didn't really address the history, quite frankly. Baker just basically said, well, Heller and McDonald and Bruin said law-abiding as many times as it did. Therefore, this guy's not law-abiding. Therefore, that's it, end of story, game over. And I submit to your honors, respectfully, that Bruin requires a lot more than that. Assuming that, and not even assuming, again, I steadfastly maintain that Mobley is covered by the text. All right, so once he's covered by the text, now the court has to delve into whether or not the government met its burden. I'm sorry, Mr. Gonzalez, I just want to back you up for just a second, just to be clear on some things. So you agree that there's a two-part test in Bruin, correct? Correct. Okay, I'm sorry, I'll let you speak to that. Was there something you wanted to say? I didn't mean to cut you off. Yeah, I was just going to mention, it's kind of a two-step, but in the second step, it's kind of a 2A and a 2B. Right, but let's just come back to the first step for a second. Okay. Isn't the first step to determine, because you just made some comments about Baker that, not that it matters, but I'm not sure I agree with you, that Baker didn't break it off all these holes. But isn't the first part of the test to determine whether or not Brewer even applies? Because it applies if we find that he's a convicted felon, then Brewer does not apply. We don't have to get to the next step if we find that he's a convicted felon, because he's not covered amongst those people who even should be allowed to carry a firearm. Is that your understanding of Brewer? No, it is not, and I respectfully disagree. Help us, tell us what your understanding of Brewer is. My understanding of Bruin is, again, that's conflating the two steps. In other words... Okay, well, let's just deal with step one, though, please. I didn't mean to cut you off, but let's just deal with step one. Go ahead, take us through it. Okay. So again, the relevant question is whether or not mere public possession of the firearm itself is covered by the text of the Second Amendment under Bruin. That's it. Not whether or not he's a convicted felon. Whether or not he's a convicted felon is more appropriately addressed in step two, once we accept the idea that his conduct, the mere possession, is covered by the text of the Second Amendment, which Brooks says that it was. And I think rightfully so, because again, Bruin just instructs that that's what we love to. We love to the text. And then once we all agree that Mobley's a convicted felon... Justice Johnson's question just a second ago. So therefore, you're saying that we start with the assumption that all people are law-abiding citizens. So people applies to everybody. That's what you're arguing, correct? Or that law-abiding is not part of the Second Amendment text. That's absolutely right. Again, those types of considerations as to the justifications for the restrictions and as to the justification for the burdens. Because again, I'm coming to the second step now. And I don't mean to kind of jump all over the place, but for the second step, the historical step, the court imposes two different metrics. One is how severely the modern gun restriction, which in this case is the unlawful possession by a felon statute. So one, how severely the modern gun restriction imposes on the right to keep and bear arms. And number two, why the modern restriction was imposed. That's when we start to answer those metrics and that question, as far as history and tradition, that's when we get into the law-abiding. That's when we start looking to analogs and the whole concern about why we want to disarm people who aren't law-abiding or maybe who are deemed untrustworthy or people who are deemed unvirtuous and things of that nature. So your position then, just so that I'm clear, is that the first step, Bruin always applies that, right? If it's based on their possession, like in this case? Yes, absolutely. As long as it's a Second Amendment issue, it's covered by the Second Amendment because everybody has a right to bear arms. That's kind of what you're saying. Everybody, regardless of their status, regardless of if they're mentally ill, regardless if they're violent felons, they have a right to possess. That's where you start. Is that correct? Well, okay. I'm not going to go that far because I don't have... I'll make it as applied challenge. Okay. So I can't sit here and... Yeah. So no, but what I'm saying... I'm with you. Yeah. But I'm saying in a case like this, in Mobley's specific circumstance where he's simply with possessing a weapon, which the Second Amendment says it's his right to keep in bare arms, the only thing that makes it illegal is his status. Okay. But again, the status and the reasons for the status and the justifications for it and the historical and the analogs and all the questions as to how we got here is more appropriately analyzed under the second step of Bruin. So that's... Let's just say that we'll stay with you on that. And we're now at the second step. So let's now discuss how, what impact does his felony conviction... And we'll just start with the felony conviction here that was a part of the underlining case, which was the escape. Correct. How does that impact our analysis now? But I don't think that we can ignore the fact that there is, and you've conceded that there is a robbery and an aggravated battery conviction in his background as well. Well, according to the PSI. Okay. But I'll give you... Assuming that's the case. Assuming that's the case, that doesn't change what my position's going to be and what I'm about to articulate as to why there's no historical analog. Okay. And the state doesn't really do this and it's brief, and maybe they'll do it here today. But Bruin was very specific. They clarified that there's again... I can't overstate this enough. There's two metrics to be used in comparing any historical analogs against contemporary or modern day gun restrictions. Right? Again, one, how severely the modern gun restriction imposes on the right to keep and bear arms. That's number one. Number two, why the modern restriction was enacted in the first place. Now, my position is that first one, the very first one, the how severely the modern gun restriction imposes on the right, how severely it burns that second amendment right, is what is not rooted in history and tradition. I'll even give... I'll even... Well, let me just go through my points. Okay. I'm going to ask you to make a final point, keeping in mind that you will have time for rebuttal, but I'll give you a little leeway. Oh, okay. Thank you, Your Honors. I appreciate that. And Justice Johnson, I'd ask if you'd give him a little bit more time here because he's covering some new ground that has not been argued by other... I don't even know if this has been argued in other courts. So I'd like to hear his argument on it. Okay. And I will go as fast as I can. Okay. All right. So again, it's important that it's the government's burden to show all of this. All right. And I think that often gets overlooked. It's not enough for the government to present a bunch of string sites and to say 20 cases or 10 cases or 50 cases. No, it's the government's burden to demonstrate these explicit analogs that it wants to rely on. It's not Mobley's job and it's not the court's job to research and to present this for the state. With that understanding, okay, again, some critical points. And again, I'll go quickly. The state doesn't argue much less demonstrate how or whether earlier generations and earlier traditions address, number one, the general societal problem of gun violence or firearm related violence with similar measures. Again, the measures being lifetime bans. Nor could it, lifetime bans didn't really come into existence either at the federal or state level to some 200 years after the founding. I'll briefly address two broad categories that the state has referred to over time and that I think the state to some degree tried to do in its brief of historical regulations that it claims are relevantly similar. And that is when categories, broad categories like untrustworthy, unvirtuous. So that's number one. Disfavored people, if you will, disfavored groups, whether it's Native Americans or African-Americans at the time of slavery, all that kinds of stuff, right? Certain groups, Protestants, Catholics, okay. With the idea presumably that, well, they got to disfavor certain groups then. So, hey, we should be able to disfavor certain groups now, even if obviously none of that would fly today from the owner of the constitution. So that's number one. And number two, laws that authorize things like capital punishment for felonies and like a forfeiture of state types of laws, right? So again, the big difference and the reason why those aren't even distant cousins, much less, and I know we're not looking for analog twins or anything like that, but these are beyond distant cousins. These are examples in origins because Catholics, enslaved people, Native Americans, all right, assuming that they were all dispossessed for one reason or another, they all still had mechanisms whereby they can their arms back by disavowing their religion, disavowing their oaths. And of course, as far as, you know, I would submit that the loyalty- Just now you said they all had ways to disavow, but you meant that some of them did. Some of them had no way. They couldn't change their status. Well, no, the black Americans, the slave could not, but the way they could get their guns, according to some articles, is like, okay, they get permission from their masters at that time. So the point being that there was some mechanism, no matter how ugly and shady the history was back then, okay, which of course obviously wouldn't fly now, but even then there was mechanisms for it. It's a lifetime ban. That's it. Boom. End of story. In other words, it's not in compliance with the historical tradition. Yeah, that's not an analog. That's just not an analog because here we're talking about lifetime disarmament based solely whether it's one conviction or two convictions or six convictions, whether it's a robbery, whether it's a, you know, lying on a form. I think that's an important, very important difference. And to rule otherwise ignores that second part, that part B, or I guess the way I phrase it, part A. It ignores the how, the second amendment is burdened. So all of the, and so, I mean, I'd like to hear, I guess, if the state does have any traditions or historical laws that somehow disarm felons for life. Thank you very much, counsel. Thank you. Okay. Apelli. Good afternoon again, your honors. May it please the court. So at the time that the defendant and the people filed their respective briefs earlier in the summer, spring this year, Illinois had yet to address the constitutionality of the unlawful use of a weapon by a felon statute or Illinois' firearm licensing regimes in general following Bruin. So as a result, both parties relied heavily on persuasive authority from various federal district courts, mostly regarding the felon in possession statute, the felon one or the federal one, excuse me. But since that time, this court has decided a number of post Bruin cases and upheld the constitutionality of Illinois' firearm licensing regimes, as well as the UUW felon statute specifically. As a result, the task today before this court is an easy one. This court should affirm defendant's conviction for the unlawful use of a weapon by a felon, reject his as applied challenge to the UUW felon statute and find that the statute is constitutional as applied to defendant. And I know that the court, defendant today, counsel for defendant discusses the historical traditions section of the Bruin test, but I do want to bring the court back briefly to the first section of the test. So Bruin held that the second amendment protects the rights of law abiding citizens to carry firearms in public for self-defense, subject to certain reasonable and well-defined restrictions. The court explicitly recognized as legitimate firearm licensing regimes that require applicants to meet specified and objective criteria, such as passing a background check. Bruin explained that these requirements are designed only to ensure that those bearing arms are in fact law abiding, responsible citizens. This court upheld this section of gun and upheld the constitutionality of Illinois' Floyd firearm owner's identification card acts and concealed carry license acts. It explained the gun court explained that in Illinois, the state does not have discretion to deny a Floyd or CCL to an applicant who fulfills specific objective criteria required to lawfully possess a firearm. And this court concluded like Bruin, but the Illinois scheme aims to ensure only that law abiding citizens are allowed to carry firearms. But counsel, how do you reconcile the treatment of someone that has a background that includes maybe an arrest for civil disobedience versus someone who has a background that includes, you know, a battery or, you know, domestic battery or something of that sort? Should they both be treated equally? No, your honor. So, so a number of courts and a number in oral argument recently in Rahimi, for example, the Supreme court, the line has been drawn at the felony mark. So misdemeanors are not treated as misdemeanors do not take you out of that law abiding citizen category. Obviously this is an as applied challenge to this defendant. There could be outliers, but in, in, in, you know, Heller and reaffirmed in Bruin and McDonald, we recognized that nothing bars States from disallowing possession of weapons by felons. So that is very specific language that is used for a reason to ensure that it isn't too broad of a prohibition. And this court recently upheld the constitutionality of this specific statute, the UW statute in people be Baker. And I believe it was this division of this court in Baker where the defendant raised an as applied challenge to the UW felon statute like here. And this court stated the Bruin court could not have been more clear that it's newly announced test applied only to laws that attempt to regulate the gun possession of law abiding citizens and not felons like defendant. And yes, Baker pointed out that Bruin States, the phrase law abiding 18 times throughout its majority and concurring opinions. There's a reason for that. Recently, this court also upheld the UW felon statute and people be Robinson where the defendant again, argued that the UW felon statute was unconstitutional because he was not dangerous at the time of his arrest. Again, the court rejected this. They found that Heller McDonald and Bruin make clear that felons are not and have historically not been protected by the second amendment as law abiding citizens. There, they concluded the defendant was not a law abiding citizen because he was convicted of three prior felony offenses. Here, defendant has 19 felony convictions, excluding the current one, and a number of misdemeanors as well. Now, as Justice Walker explained a few minutes ago, we don't reach the second step of the Bruin test where the first threshold step isn't met. Where defendant is not law abiding, the second amendment does not apply. Pursuant to this court's recent decisions in Baker, Gunn, Robinson, and Brooks, convicted felons, whether violent or not, are not protected by the second amendment. And the UW felon statute is constitutional as applied to defendant. And if this court has any questions, I welcome them at this time. So, you know, back to my earlier question, you just stated that it doesn't apply whether or not the felony is violent or not. And, and that's, you know, part of part of my issue. I'm sure, you know, opposing counsel would, you know, take it even further than that. But, you know, there are certain financial crimes that are felonies, but, you know, they're not violent. And how do you justify them losing their right to bear arms indefinitely? When, you know, they, they don't have a history of violence. Your Honor, I do know that the Floyd Act, at least in Illinois, does have an appeal process. I'm not very familiar with it. It isn't relevant, you know, for this as applied challenge, but I do know that it exists. And again, if you're convicted of a felony, you do lose certain rights, right? You can't vote, you can't serve on a jury. I understand that the Second Amendment is a constitutional right, but there's a reason that it is restricted to those who are law-abiding citizens. And again, I know that there are outlier situations, like you indicated, where someone is, you know, committed one felony once, and it was nonviolent, financial. That could be something you appeal under the Floyd Card Act. But as applied to defendant who has 19 felony convictions, including two for violent crimes, this is not unconstitutional. And this isn't as applied challenge, but let me just ask, because you mentioned just, oh, I just wanted to say that convicted felons can't vote in the state of Illinois. But so it seems like your point you're making in answering Justice Johnson's question just now, that the other things don't matter to this case, because what Justice Johnson just raised, she mentioned the financial crimes, and I'm sure you're familiar with the Range case from the Third Circuit, where the person applied for the food stamps, and apparently they had an income that was higher than what your income should be if you're going to be getting food stamps from the government. And that person was subsequently convicted of a felony, and Range held, the Court of Appeals there held that that person, that the first prong of Range didn't apply to that person, because that person is not in that category of offenders that we want to be barred from, as Justice Johnson just put it, being able to ever in their life protect themselves with a firearm. And do you want to speak to that at all? I do. So I know that Range is kind of a weird case, because initially defendant was convicted of a misdemeanor crime, I believe, and it then was a felony either later or in another jurisdiction. I'm not 100% sure. I do know that this court discussed it in Baker, and said that the defendant's reliance on Range is unpersuasive, because Range concerned disarming those with misdemeanor convictions. And again, I do agree that that is something, especially for, you know, making a false statement to obtain food stamps, is something that is not the same, and should not be, someone should not be prohibited from the right to bear arms in that case. So I do think that is distinguishable. Right, but this is an applied challenge anyway, so that we're talking about, so that's not the case here is what you're arguing. Exactly. You're specifically speaking about Mobley. I am. You told us that Mobley has violent convictions. He does, yes. And you seem to be arguing today that people who are violent felons should not be able to possess guns, and people who are non-violent felons, as Justice Huffman said, should not be able to possess guns. And you're saying that these are financial crimes that you believe those people should, are not similarly situated as Mobley? Yes, your honor. I'm not taking a stance on whether or not there should be that distinguishing line necessarily in future cases. I know in Brooks, the court rejected the attempted distinguishment between violent and non-violent felons, finding that, you know, there's a long historical tradition of disarming felons, whether violent or not. So I'm not taking a stance on that. I'm just saying, yes, today for this case, as applied to defendant, he has violent, you know, felony convictions. They don't go away with time, you know, they're old, but they're still there. And the UUW felon statute is constitutional as applied to him. And you realize that that was my question. My question was simply, are they similarly situated? And your answer is no, they're not similarly situated as the, as applied challenge that we have here because he has, he's a violent felon. Yes, your honor. Okay. That's why my question was, my question wasn't asking you to take a position. I just simply asked where they're similarly situated. Okay. I apologize. I wanted to clarify. Any additional questions for counsel? No. Thank you. Rebuttal. Yes, your honors. First of all, again, I take, I take strong exception to the idea that just because Illinois is a shall issue state and because part of that shall issue takes things into account, like a background check, a felon, convicted felon status and things of that nature, that somehow Bruin endorsed that they're just beyond the reach of the second amendment. Because, because Bruin did no such thing. And Brooks rightfully recognized that Bruin didn't know, that Bruin did no such thing. Bruin explicitly, and Heller, they all, yes, they refer to the words law abiding. And Bruin in particular, when it discussed how it's not going to take, basically they're not, they're not going to invalidate the shall issue regimes. But again, that wasn't before them. And Bruin explicitly said that even the shall regimes are, are subject to challenge because the shall regimes are also ripe for abuse. So this idea that somehow, just because Illinois has a concealed carry act or has a FOIA act, that, well, Bruin's off the table. That's was actually what, while the crime, I guess, was classified as a misdemeanor. It was what they called a felony equivalent in the sense that the maximum sentence I believe was five years. Okay. But the bigger point being that there's, there are certain instances. And I guess my biggest point and my biggest problem with what the current statute as it's currently constructed is that it does allow anything, any way for convicted felons to restore their civil rights so that they can possess a gun for protection, for protection, whether it's in their homes or whether it's in public, which the Supreme Court said is a second amendment constitutional right. And- Mr. Gonzalez, the Supreme Court also, you know, it didn't just use the word law abiding, it also used the word responsible. What do we, what do we make of that? I mean, the short answer is your guess as good as mine. I mean, that's about as amorphous as a term as it comes. Like that's just hopelessly vague. I mean, what, what does that mean? I mean, someone who leaves their kid home by themselves without a babysitter at a certain age, someone who gets into a car after two or three drinks. I mean, that could mean anything. I mean, I think that's part of the problem. Like, okay, we're going to allow the government to make that decision and just, we're going to have arbiters to like, okay, well, you know what, we're going to, we're going to deem you not responsible. So therefore we're going to subject you to a lifetime disarming it. I don't know. It doesn't make sense. That can't be, that can't be the rule. That can't be what Bruin meant. Well, but it could mean, for example, someone who's suffering from severe mental health issues could be restricted. It could be that a minor could be restricted because they're not responsible, right? Sure. It could. I guess my answer to that would be that's, that's certainly for the legislature to determine and to be tested if that is a basis for which they impose any type of firearm restriction. I don't think it certainly doesn't really answer any questions in this particular case. But as far as your question as to what is responsible, I mean, that, that term is just hopeless. I, it's hopelessly vague. I don't know what, what does that mean? I mean, that could mean anything. Like I said, that could mean anything from leaving your minor child at home without a babysitter to a number of other things that people do every day. I have, you know, great respect for your argument because I, you know, understand, you know, the historical, you know, background and implications of what this law does. However, I ask you, is this the case that we want to use as a test case or that we want to, you know, make that argument on where, you know, this person has a significant background or, you know, has a background of how many, 19 felony convictions? Is this a case that you're, you know, this panel should, you know, step out there on and, and, and challenge the, you know, the current status quo? Well, I think the best way I can answer that question is two fold. One is, I think what matters more is the predicate felony that, that Mobley was charged with. Okay. Because again, to the extent that the problem with this current statute is that it allows no mechanism, zero mechanism, it's a lifetime ban. So what if he commits that aggravated battery or the robbery as a juvenile or in his twenties, 20 years, 30 years ago, 10 years ago, at what point, I mean. But that's what I'm saying. This isn't that case. If we have that case, then, you know, maybe we're, you know, saying, Hey, we're going to hang our hats on this. We're willing to take a chance on this case, but this isn't that case. Well, but again, again, the law does not allow for Mobley or any other defendant to apply for a reinstatement of his right to own a gun. And there is no analog. There is zero analog. And I have, I have not heard the state address one and I defy the court or everybody else to find one, even in the, in the line of cases that the state cites in its brief, there are just, there is zero analog that, that institutes a lifetime ban. Even of these other disfavored groups, there was always ways to get your arms back. And it's not like the right to self-defense goes away. You're talking about the people. Okay. Well, other constitutional provisions use the word people. They, they, they don't lose their rights. For example, you know, the fourth amendment, the first amendment, they don't lose those rights. They're not non-people just because of their felony status. Why, why would it be the same for the second amendment? That just doesn't make sense to me. I don't know how you square that. You say that there's, there was a way to get the arms back. But there's also a way not to lose your arms here. But that's, under Bruin, that's not really the inquiry though. Again, the inquiry under this tradition test is whether or not there's an analog for the burden, for the burden. And that to me, that's what I'm hung up on because that, that, that's an important thing, that lifetime ban. And that doesn't go away regardless whether or not, you know, how many convictions he has, whether it's one or two. And, and final point, because I know I don't want to, I don't want to belabor this, but to your question about, well, do we want to really, you know, go out on a limb? I don't know if I would call it going out on a limb more so as to just abide by the test and to, and to just be faithful to the test itself and to go through all of the steps and not give short shrift to any of them and to hold the state to its burden of demonstrating the analogs so that it, because it's not Mobley's burden and it's not the court's burden to find what the state doesn't present. That's my biggest problem. When I read the state's brief, there's a couple of points where they use language. It's like they're Mr. Gonzalez, you would argue then that to say that someone who is a convicted felon is no longer has a second amendment right would be attuned to saying that no one who, that someone who is a convicted felon no longer has a right to free speech under the first amendment or, or to a right to counsel under the second amendment, or to not be able to have cruel and unusual punishment under the eighth amendment or, or to, to, to not be protected from search and seizure under the fourth amendment or, or quartering of search soldiers under the third amendment. You believe this is some slippery slope out there that just doesn't make any sense. Is that what your argument would be? Yeah. You can't square it. Like you can't, I guess what I'm saying is because the state is so reliant on it and it's brief and they're, and she referred to it a couple of times here today, like, well, no, that can't be the answer. You cannot reject Mobley's argument just by saying, okay, he's not the people in the story, no need to move to the second step. And again, to, to justice Johnson's question about, you know, you know, okay, is this, is Mobley the most sympathetic guy, that kind of thing? Do we really want to go out for him? The bigger point is that Bruin says what it says for better or for worse. And obviously policymakers and lawmakers will, you know, what, what regard to what kind of can of worms brewing open or anything like that in policies, the test is what it is. It's a, it's a simple, it is what it is. And I think rightfully so, because there has to be some mechanism, like you said, you know, convicted felons, even people in prison. Yeah. They don't have the same privacy rights, but they still have some rights. I think we would all agree. So why would the second amendment, right? People still have the need to self defense people that live in dangerous neighborhoods, or for whatever reason, the court, the second amendment says it's their right to, to whatever, to have a firearm for self defense. That's well established now. So why does that, why does that go away? Why is there no mechanism? One last thing that council, and then we're going to move on. Okay. No, oh, I'm sorry. But no, I guess that's, yeah, just, just faithful application of all of the Bruin steps without conflating any of them, or short shrifting any of them. And most importantly, recognizing that, that, that subprong of the history test that says, we look at the burden on the right itself, and whether or not there's an analog to that burden, which in this case, is the lifetime ban. Thank you very much. Any additional questions from the panel? No. Thank you very much for your, your presentations on today. You've certainly given us quite a bit to consider. And you should be proud of the jobs that you did today. This is a very important case and issue. And so I thank you for your, your effort with respect to this matter. And we will take your arguments under advisement. Thank you. Thank you, your honors.